IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. 19-218-9 |
| | : | |
| JAMES GOODE | : | |

## MEMORANDUM OPINION

Smith, J.                                                                                      May 13, 2020

The defendant, one of thirteen co-defendants charged in a superseding indictment, is accused of participating in a racketeering enterprise, and faces multiple charges pertaining to committing sex trafficking by force, fraud, and coercion, and of a minor. The allegations against his co-defendants include charges as extreme as committing disturbing acts of violence, such as torture with hammers and knives, as well as murder. The defendant now asks the court to sever the charges against him for a separate trial pursuant to Rule 14 of the Federal Rules of Criminal Procedure. He argues that he will experience severe and incurable prejudice if he is required to stand trial with his co-defendants, who are charged in the same conspiracy. The government opposes the motion to sever, arguing that joinder is proper and cautionary jury instructions can cure any possible prejudice. After considering the parties' submissions, and after hearing argument, the court will deny the defendant's motion to sever.

## I.      RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

The government commenced this overall prosecution by filing a criminal complaint on March 12, 2019, in which it alleged charges of "[c]onspiracy to commit sex trafficking by force, fraud, or coercion, and of a minor" in violation of 18 U.S.C. § 1594, against six defendants. *See*

Doc. No. 1.[1] The grand jury later returned an initial indictment against these six defendants and two additional defendants on April 11, 2019.[2] *See* Doc. No. 1. On January 16, 2020, the grand jury returned a superseding indictment which charged six of the original defendants, and seven new defendants, including James Goode ("Goode"), with numerous offenses.[3] *See* Superseding Indictment, Doc. No. 65. In this superseding indictment, the grand jury charged Goode with offenses in four counts: Count One, conspiracy to participate in a racketeering enterprise in violation of 18 U.S.C. § 1962(d); Count Two, conspiracy to commit sex trafficking by force, fraud, and coercion, and of a minor in violation of 18 U.S.C. § 1594(c); Count Ten, sex trafficking by force, fraud and coercion, and of a minor, aiding and abetting, and attempting to do so in violation of 18 U.S.C. § 1591(a)(1), (b)(1), (b)(2), (c), 18 U.S.C. § 1594, and 18 U.S.C. § 2; and Count Eleven, sex trafficking by force, fraud, and coercion, and aiding and abetting, in violation of 18 U.S.C. § 1951(a)(1), (b)(1), 18 U.S.C. § 1594, and 18 U.S.C. § 2.[4] *Id.* at 2–24, 33–34.

Concerning the charge of conspiracy to participate in a racketeering enterprise, the grand jury charged that Goode "was a member and associates of the Sevens [gang. He] supplied controlled substances to the Sevens in the Boarding House for resale, and recruited and attempted to recruit minors and women for commercial sexual encounters."[5] *Id.* at 6. As for the racketeering

---

[1] There are two documents with the Doc. No. 1 designation on the docket. This "Doc. No. 1" is a reference to the first of those designations on the docket. This first group of docket entries appears to have been originally docketed at No. 19-mj-397. The original six defendants were Shaquile Newson, Alexander Malave, Fatiema Bivens, Karvarise Person, Savion Garcia, and Isaiah Rowe. *See* Compl., Doc. No. 1.

[2] The two additional defendants named in the indictment were Bryanna C. Concepcion and Michael Diaz-Walker. *See* Indictment at 1, Doc. No. 1.

[3] The superseding indictment no longer contained charges against Bryanna C. Concepcion and Savion Garcia. *See* Doc. No. 65.

[4] Goode and at least one other defendant are charged together in each of these counts. *See* Superseding Indictment at 2–24, 33–34.

[5] The superseding indictment alleged that the Sevens are

    A criminal organization whose members and associates engaged in acts of violence, including murder, attempted murder, kidnapping, assault, robbery, sex trafficking by force, fraud, or coercion, sex trafficking of a minor, and trafficking in controlled substances, and which operated principally

conspiracy, the grand jury accused Goode and the other defendants, from "December 2017 to on

or about March 13, 2019," of

> conspir[ing] and agree[ing] . . . to conduct and participate, directly and indirectly, in the conduct of the affairs of [the Sevens] through a pattern of racketeering activity, . . . which consisted of:
>
> > a.      multiple acts of murder chargeable under [18 Pa. C.S. §§ 2502, 901, and 903] . . .;
> >
> > b.      multiple acts indictable under [18 U.S.C. §] 1591 (relating to trafficking in persons);
> >
> > c.      multiple acts indictable under [18 U.S.C. §] 2251 (relating to the production of child pornography);
> >
> > d.      multiple acts involving kidnapping, chargeable under [18 Pa. C.S. §§ 2901, 901, 903] . . .;
> >
> > e.      multiple acts involving robbery, chargeable under [18 Pa. C.S. §§ 3701, 901, 903] . . .; and
> >
> > f.      multiple offenses involving dealing in controlled substances in violation of [18 U.S.C. §§ 841, 846].

*Id.* at 9–10. Concerning the overt acts committed in furtherance of the conspiracy, the grand jury

accused Goode of:

- From "in or about August 2018 to in or about December 2018:" (1) "rap[ing] Minor #1, who is known to the grand jury and who was 17-years old at the time, in the Boarding house" and (2) "attempt[ing] to recruit, and aid[] and abet[] the recruitment of, Minor #1, through force, fraud, and coercion, to engage in commercial sexual encounters." *Id.* at 12.

- From "[i]n or about September and October 2018:" (1) "recruit[ing] Victim #6, who is known to the grand jury, and attempt[ing] to do so, to engage in sex trafficking by force,

---

in a boarding house, located at 125-127 S. 4th Street, Reading, Pennsylvania, and its surrounding areas, hereinafter referred to as the 'Boarding House.'"

Superseding Indictment at 2.

fraud, and coercion," (2) "[holding] a gun to Victim #6's head as punishment because he believed she 'snitched' on him," and (3) "[f]orcing Victim #6 to have sexual contact with him." *Id.* at 12–13.

- "On or about November 1, 2018:" (1) "knowingly possess[ing] heroin, cocaine, and marijuana, with the intent to distribute, at a residence located at a residence in Reading, Pennsylvania" and (2) "knowingly possess[ing] a Sig Sauer P238 firearm . . ., loaded with 7 live rounds of ammunition, a Ruger P89 firearm, . . . loaded with 14 live rounds of ammunition, and a Smith & Wesson, SW40V firearm, . . . loaded with 13 live rounds of ammunition."[6] *Id.* at 15.

On January 24, 2020, Goode appeared before United States Magistrate Judge Henry S. Perkin for his initial appearance and arraignment. *See* Doc. No. 103. On this date, Judge Perkin appointed counsel for Goode, received Goode's plea of not guilty to all counts, and set the standard 14 days for counsel to file pretrial motions. *Id.* On February 5, 2020, Goode moved to stay the pretrial motion deadlines. *See* Doc. No. 111. Although this court denied the motion on February 13, 2020, the court established a new schedule which, *inter alia*, set a new deadline of April 15, 2020, for filing any pretrial motions. Feb. 13, 2020 Order at 2, Doc. No. 125.

---

[6] In the government's response in opposition to the motion to sever, it noted that law enforcement executed a search warrant at Goode's residence in Reading, Pennsylvania on November 1, 2018. Gov't Resp. in Opp. to Def.'s Mot. for Severance at 7. During the search, the government represents that law enforcement recovered the following:

> heroin, cocaine, and marijuana, several large digital scales, drug paraphernalia including baggies, razor blades, rubber gloves, baking soda, . . . Inositol powder (a known cutting agent for cocaine)[,] three firearms, including a Sig Sauer P238 firearm bearing serial number 27A110132, loaded with seven rounds of ammunition, a Ruger P89 firearm, bearing serial number 31370138, loaded with 14 rounds of ammunition, and a Smith & Wesson, SW40V firearm, bearing serial number PAN9353, loaded with 13 rounds of ammunition, and $2699 in cash.

*Id.* Immediately afterwards, the Commonwealth of Pennsylvania charged Goode in the Berks County Court of Common Pleas with drug and firearms offenses, and these charges remain pending. *Id.*

On April 13, 2020, Goode submitted an unopposed motion to continue the pretrial motions deadline of April 15, 2020, citing concerns pertaining to the current COVID-19 pandemic and how it hampered discovery and client communication. Doc. No. 145. On April 23, 2020, the court held a telephone conference with counsel to discuss Goode's request for a continuance of the pretrial deadlines along with a number of other requests by Goode's co-defendants to, *inter alia*, continue the pretrial motions deadline and the trial date. During the conference, while counsel for all of Goode's co-defendants expressed a desire (even if they had not filed a motion to continue) for the court to postpone the trial date in light of the pandemic, Goode's counsel did not and indicated that he would be filing a motion to sever.[7] Later that day, Goode filed the instant motion to sever the charges against him based on prejudicial joinder. Doc. No. 168.

The government filed its opposition to the motion to sever on April 30, 2020. Doc. No. 170. Goode replied to the government's opposition the same day. Doc. No. 171. In Goode's reply, he included certain photographs as exhibits, that he had obtained through discovery, in order to prove the potential prejudice from the joinder. The government moved to seal these attachments on May 1, 2020. Doc. No. 173. Goode submitted opposition to the motion to seal on May 5, 2020. Doc. No. 174. On May 7, 2020, the government filed an amended motion to seal the attachments, which Goode replied to later the same day. Doc. Nos. 175, 176. That same day, the court held oral argument on motion to sever and the amended motion to seal. *See* Doc. No. 177. During oral argument, Goode indicated that he had no opposition if the court felt that it was best to seal the attachments, so the court granted the government's amended motion to seal, denied the initial

---

[7] In addition, some of the defendants sought a continuance to allow them to have additional time to receive and review discovery from the government. Further, during the call, counsel for the government and a co-defendant, Karvarise Person, indicated that the Department of Justice is currently in the process of determining whether to pursue capital charges against Mr. Person only.

motion to seal as moot, and directed the clerk of court to seal the attachments. May 7, 2020 Order, Doc. No. 178.  The motion to sever is now ripe for disposition.

## II.     DISCUSSION

### A.     Standard

Rule 8 of the Federal Rules of Criminal Procedure governs the joinder of criminal defendants, as well as of criminal offenses. Rule 8(b) states that "[t]he indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). With regard to joint trials, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537–38 (1993).

Despite this preference for joint trials, Rule 14(a) of the Federal Rules of Criminal Procedure allows a district court to "separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires" "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). A district court has the "sound discretion" to sever charges in a criminal case. *See Zafiro* v. *United States*, 506 U.S. 534, 538–39 (1993) ("Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion."); *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981) ("Motions for severance rest in the sound discretion of the trial judge, whose determination should not be disturbed in the absence of an abuse of discretion." (citation omitted)).

If the government has properly joined defendants under Rule 8,

a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants,

or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened.

*Zafiro*, 506 U.S. at 539 (citation omitted).

In the instant case, there is no doubt that this is a complex case involving many defendants, as the superseding indictment includes twenty-two counts against 13 defendants. Furthermore, this court has already declared this case to be complex. *See* July 24, 2019 Order at 1–2, Doc. No. 45; Oct. 24, 2019 Order at 1–2, Doc. No. 58; Feb. 13, 2020 Order at 2–3, Doc. No. 125. While the risk of possible prejudice could be high given the nature of the case, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539 (internal citation omitted).

One additional complexity of the instant case is that it is possible that it becomes a capital case against Karvarise Person. As Goode points out, when it comes to capital cases, some district courts have held that in the context of severance, "[t]he threshold for determining what constitutes prejudice and when the jury's ability to render a reliable verdict is compromised is necessarily lower than in the ordinary case." *United States v. Solomon*, No. 02:05cr385, 2007 WL 1228029, at *3 (W.D. Pa. Apr. 25, 2007) (citation and internal quotation marks omitted). Nevertheless, not all courts have held this to be true in death penalty cases, as "[t]here is no per se rule; plainly the degree of antagonism must be such that the jury will inappropriately infer that one or both are guilty." *United States v. Green,* 324 F. Supp. 2d 311, 324 (D. Mass. 2004) (citing *United States v. Talavera,* 668 F.2d 625, 630 (1st Cir. 1982)).

### B.    Analysis

Goode's motion to sever is based in part on the argument that he "would be unfairly prejudiced by his jury hearing proof of numerous acts of violence, mayhem and even capital murder, in which Goode was not involved." Def.'s Br. in Supp. of Mot. to Sever Counts One, Two, Ten and Eleven of the Superseding Indictment Based on Prejudicial Joinder ("Def.'s Br.") at 11, Doc. No. 168. However, as indicated above, the superseding indictment charges Goode with acts showing that he played a significant role in the Sevens gang. Specifically, the superseding indictment alleges that Goode, *inter alia*, "raped Minor #1, who is known to the grand jury and who was 17-years old at the time, in the Boarding House," "attempted to recruit, and aided and abetted the recruitment of Minor #1, through force, fraud, and coercion, to engage in commercial sexual encounters," and "held a gun to Victim #6's head as punishment because he believed she 'snitched' on him." Superseding Indictment at 12–13, Doc. No. 65.

Such acts demonstrate that even though Goode was in jail when certain co-defendants allegedly committed other acts of violence, like during the murder of Leroi Davis, and despite the fact that Goode was not a member of the allegedly "ruling triumvirate of the racketeering enterprise," Def.'s Br. at 2, these acts, if true, are enough to show that Goode played a key role in the gang's racketeering and sex trafficking enterprise. *See United States v. Thornton,* 1 F.3d 149, 153 (3d Cir. 1993) (affirming district court's decision to deny request for separate trial from two co-defendants, concluding that appellant was properly jointly tried with co-defendants even though he claimed that he was incarcerated during continuation of conspiracy and did not participate in every act in "furtherance of the overarching conspiracy"); *see also United States v. Savage*, Crim. A. Nos. 07-550-03, 07-550-04, 07-550-05, 07-550-6, 2012 WL 6609425, at *7 (E.D. Pa. Dec. 19, 2012) (denying severance because "[t]hese overt acts demonstrate that despite Northington's

consecutive periods of incarceration, or the fact that he may not have been the decision maker of the KSO's operations, he played a key role in the enterprise's racketeering activity").

Furthermore, the court finds the case of *United States v. Eufrasio*, 935 F.2d 553 (3d Cir. 1991), to be instructive on when defendants can be tried together. In *Eufrasio,* only one defendant faced a murder charge while the others did not. When the co-defendants moved to sever, the Third Circuit held that

> [s]ince Eufrasio and Iacona were jointly indicted with Idone, and all appellants were charged with the same conspiracy to participate in the same Scarfo enterprise, the public interest in judicial economy favored joinder. Common evidence of appellants' gambling and extortion activity and loansharking, would have been admissible against each appellant in separate trials, as would evidence of the Auferio murder conspiracy which proves the nature, history and means of the enterprise charged against each appellant. Because there would have been substantial overlap in the evidence presented in separate trials, we cannot say the trial court abused its discretion denying Eufrasio's and Iacona's Rule 14 severance motions. The substantial public interest in the judicial economy of a joint trial outweighs the potential for prejudice to Iacona and Eufrasio associated with evidence of Idone's murder conspiracy.

*Id.* at 568–69. Similarly, in the instant case, the court finds that public interest in the judicial economy of a joint trial outweighs any potential for prejudice to Goode being associated with evidence of the murder. A joint trial "generally serve[s] the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit. Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Richardson v. Marsh,* 481 U.S. 200, 210 (1987); *see also United States v. Hart,* 273 F.3d 363, 370 (3d Cir. 2001) (rejecting appellant's argument that joint trial prejudiced him since "much, if not all, of this [conspiracy] evidence could have been presented against [defendant] had the trials been severed," and because district court instructed jury to "give separate individual consideration to each charge against each defendant").

9

In addition, the mere fact that the superseding indictment describes a murder in which Goode did not allegedly participate does not mean that he is substantially prejudiced. *See Savage*, 2012 WL 6609425, at *7 ("The fact that the Indictment describes several murders in which Northington did not participate, including the arson murders, does not constitute 'clear and substantial prejudice' that would warrant severance." (citations omitted)). Furthermore, the court can mitigate any prejudice to Goode through clear jury instructions giving separate consideration to each charge against each of the defendants. While it is true that this is a complex case involving many co-defendants, there is no indication that the jury will be unable to compartmentalize the evidence against each of the defendants. *See id.* ("This is not a case in which the jury will be unable to compartmentalize the evidence against each Defendant. While the Indictment describes 140 overt acts, the allegations in the Indictment with respect to each Defendant are clear."); *see also United States v. Urso,* 369 F. Supp. 2d 254, 269–70 (E.D.N.Y. 2005) (concluding that while joint trial involving six defendants, four murder allegations, and numerous racketeering offenses, could be "quite lengthy," "a joint trial of these defendants is more consistent with the fair administration of justice than would be a division of these defendants"); *United States v. Edelin,* 118 F. Supp. 2d 36, 44 (D.D.C. 2000) (finding that even though the case involved capital and non-capital defendants, it was "not so complex that a jury could not compartmentalize the evidence presented to it"). Rather, this court "presume[s] that the jury follows such [cautionary] instructions, and regard such instructions as persuasive evidence that refusals to sever did not prejudice the defendant." *United States v. Urban*, 404 F.3d 754, 776 (3d Cir. 2005) (internal citation omitted).

Goode also argues that the "gruesome details of the alleged murder of Leroi Davis by co-defendant Karvarise Person (including death scene and autopsy photos) are inadmissible as to Goode" and serve to demonstrate prejudice. Def.'s Reply Br. in Supp. of Mot. to Sever Counts

One, Two, Ten, and Eleven of the Superseding Indictment Based on Prejudicial Joinder ("Def.'s

Reply Br.") at 6, Doc. 171 (emphasis omitted). This is because prejudice sufficient to warrant

severance may occur in instances of

> (1) "a complex case" involving "many defendants" with "markedly different
> degrees of culpability," (2) a case such as *Bruton v. United States*, 391 U.S. 123,
> 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), where evidence that is probative of one
> defendant's guilt is technically admissible only against a co-defendant, and (3) a
> case where evidence that exculpates one defendant is unavailable in a joint trial.

*United States v. Balter*, 91 F.3d 427, 432–33 (3d Cir. 1996). Goode argues that the photos fit into

the second scenario described in *Balter*, as they should only be admissible against Karvarise

Person, and not against Goode. Def.'s Reply Br. at 7. Given the prejudicial nature of the

photographs, Goode contends that

> [the crime scene] photos and others like them should be held inadmissible as to
> Goode under Federal Rule of Evidence 402 (because they are not relevant to the
> charges filed against him) and also under Rule 403, because the prejudicial impact
> of these photos would far exceed their probative value as to Goode, and this unfairly
> prejudicial impact could not be ameliorated with a limiting instruction to the jury.

Def.'s Reply Br. at 8.

Even if the court were to hold that the crime scene photographs (and other related

photographs of the homicide) are inadmissible against Goode, a limiting jury instruction could

ameliorate any prejudice caused by the jury seeing them as part of the case against Karvarise

Person. Again, the court reiterates that the question of prejudice turns on "whether the jury will be

able to 'compartmentalize the evidence as it relates to separate defendants in view of its volume

and limited admissibility.'" *United States v. Davis*, 397 F.3d 173, 182 (3d Cir. 2005)

(quoting *United States v. Somers*, 496 F.2d 723, 730 (3d Cir. 1974)). There is no reason why a jury

could not compartmentalize photographs such as those Goode attaches to his reply brief if the

government seeks to admit them at trial.

### III.   CONCLUSION

As explained above, the interest in the judicial economy of a joint trial outweighs any potential for prejudice to Goode, and a cautionary jury instruction can ameliorate any prejudice to Goode. A jury would be capable of following a limiting instruction and compartmentalizing the evidence when it comes to any prejudicial photographs pertaining to the murder of  Leroi Davis that are admitted into evidence. Accordingly, the court denies Goode's motion for severance.

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

12